## UNITED STATES  DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**LAWRENCE WILSON**                          **CIVIL ACTION**

**VERSUS**                                   **NO.  04-2424**

**SHERIFF HUNTER, J. HAM, ET AL**            **MAGISTRATE JUDGE**
                                             **KAREN WELLS ROBY**

## <u>ORDER AND REASONS</u>

This matter is now before the Court upon consent of the parties pursuant to Title 28 U.S.C.

§ 636(c).[1]  One of the defendants, former Orleans Parish Criminal Sheriff William Hunter, filed a

**Motion for Summary Judgment (Rec. Doc. No. 27)** seeking dismissal of the plaintiff's medical

indifference claims brought pursuant to 42 U.S.C. § 1983.  On January 13, 2005, the undersigned

Magistrate Judge conducted a hearing pursuant to *Spears v. McCotter*,[2] and its progeny, with the

plaintiff, Lawrence Wilson ("Wilson") and Timothy Richardson, counsel for defendants Hunter and

Medical Administrator J. Ham, participating by telephone.[3]  Upon review of the record, the Court

has determined that this motion can be disposed of without an Evidentiary Hearing.

---

[1]Rec. Doc. No. 22.

[2]766 F.2d 179 (5th Cir. 1985).  The purpose of the *Spears* Hearing is to ascertain what it is the prisoner alleges
to have occurred and the legal basis for the claims.  *Spears*, 766 F.2d at 180.  The information elicited at the hearing is
in the nature of an amended complaint or a more definite statement under Fed. R. Civ. P. 12(e).  *Wilson v. Barrientos*,
926 F.2d 480, 481 (5th Cir. 1991).

[3]Rec. Doc. No. 9.  The plaintiff was sworn prior to testifying.  The cassette tape of the hearing is in the custody
of the Court Recording Unit.

I.      **Factual Summary**

A.      **The Original Complaint**

The plaintiff, Lawrence Wilson, was an inmate housed in the Orleans Parish Prison system ("OPP") at the time of the filing of this *pro se* and *in forma pauperis* complaint pursuant to 42 U.S.C. § 1983.[4]  Wilson filed this suit against former Orleans Parish Sheriff  William Hunter, OPP Medical Administrator J. Ham, Dr. Campbell, Dr. Gautreaux, Dr. M. Dileo, and Dr. Caldwell, alleging that he was denied adequate medical care while housed in OPP.

Specifically, Wilson alleges that prior to his incarceration, he was diagnosed with Cutaneous[5] T-cell Lymphoma[6] ("CTCL"), a potentially fatal form of cancer that inhibits the body's ability to fight bacteria which can lead to skin disorders.  He also alleges that he suffers with high blood pressure which requires medication.

Wilson also alleges that he was in an automobile accident on October 4, 2000, while being transported from the Medical Center of Louisiana at New Orleans ("MCLNO") to the Louisiana State Penitentiary.  As a result, he suffers with neck, back, and wrist problems which require periodic pain medication.

Wilson claims that the OPP medical personnel have failed to attend to his ailments and failed to comply with the orders of his treating physician at MCLNO and have refused to provide him with clean uniforms and towels.  He asserts that the lack of clean clothes and towels and the failure to

---

[4]Wilson has since notified the Court of his release from prison.  Rec. Doc. No. 30.

[5]Cutaneous means relating to the skin.  *Stedman's Medical Dictionary*, 27th Ed., p. 440 (Lippincott, Williams & Wilkins) ("*Stedman's*").

[6]T-cell Lymphoma is an acute or subacute disease associated with a human T-cell virus.  *Stedman's*, p. 1046.

properly treat him caused his cancer to worsen and threatens his chances at remission.  He further claims that the failure to treat his other conditions also places him at risk.

Wilson claims that the defendants' actions and inactions violate due process under the Fourteenth Amendment and constitute deliberate indifference in violation of the Eighth Amendment. He also claims that the defendants' actions and inactions constitute negligent care and negligent supervision by the medical staff in violation of Louisiana law under La. Civ. Code art. 2315 *et seq.* He further alleges that the defendants actions and inactions constitute intentional, reckless or negligent infliction of emotional distress under Louisiana law.

He seeks declaratory and injunctive relief regarding the violations by the defendants and monetary damages.

### B.      The *Spears* Hearing

Wilson testified that, at the time of the hearing, he was incarcerated serving time after revocation of his parole.  He stated that he had been convicted of burglary charge 20 years ago and was released on good time credits in 1994.  His good-time parole was later revoked and he served another five years.  He further stated that he was released in 2002 on parole to the Orleans Parish parole board but he lived in Jefferson Parish.  He claimed that, although he reported to Jefferson Parish monthly, the Orleans office had his parole revoked in May of 2003 for failure to report in Orleans.  He anticipated his release to be in October of 2005.

Wilson further testified that he sued Sheriff Hunter because he is the head of the prison and he should know what his staff is doing.  He also stated that he sued J. Ham, the Medical Administrator at OPP, because his name appeared on the responses to his grievance complaints at the prison.  He stated that he was told that Ham was the hospital administrator in charge of the

medical department at OPP.  Wilson testified that Ham responded to the grievances stating that he would see that Wilson received the necessary treatment, including a blood thinner, pain relievers, and Charity appointments but nothing was ever done.  Wilson stated that he did not know whether Ham ever communicated with the doctors at OPP.

Wilson also stated that he sued Dr. Campbell because he did not treat his ailments.  He stated that he arrived at OPP on May 28 or 29, 2003 for his high blood pressure.  Wilson claimed that Dr. Campbell wanted to experiment with new medication and as a result, his blood pressure stayed high. He testified that Dr. Campbell told him that he knew that the medication did not work well on black men but he continued giving it to the plaintiff.

Wilson also sued Dr. Gautreaux because he also refused to correct the high blood pressure medicine given by Dr. Campbell.  He stated that in March or April 2004, Dr. Gautreaux added a better medication, Clonidine,[7] along with the medication given by Dr. Campbell.  The combination worked to reduce his blood pressure but Dr. Gautreaux eventually cut off the prescription.  He also stated that Dr. Gautreaux would not confer with Dr. Boh at the Tulane Dermatology Clinic about his cancer.  Wilson complained that Dr. Gautreaux did not understand the seriousness of his disease. As a result, Dr. Gautreaux would only prescribed Atarax[8] for his skin itching but would not comply with the orders from Dr. Boh.  In addition, he stated that Dr. Gautreaux prescribed two Atarax pills instead of the one ordered by Dr. Boh which caused his blood pressure to spike.  He claims that Dr. Boh ordered only one Atarax pill to be taken at night and that worked for him.

---

[7]Clonidine hydrochloride is an antihypertensive agent.  *Stedman's*, p. 364.

[8]Atarax is used for the relief of nasal and non-nasal symptoms of various allergic conditions such as seasonal allergic rhinitis. http://www.medicinenet.com.

He further testified that he sued Dr. Dileo, another doctor at OPP, because he would not help correct the errors made by Dr. Campbell. He stated that he told Dr. Dileo that Dr. Campbell was ignoring his appointments at Charity for his heart and cancer. However, Dr. Dileo told him that he would side with Dr. Campbell because they were colleagues.

Wilson also sued Dr. Caldwell for similar reasons. He stated that Dr. Caldwell refused to give him a blood thinner after his blood work was returned with a recommendation that he be given blood thinners. Wilson stated that Dr. Caldwell disagreed with the report and ignored the recommendation.

Wilson told the Court that OPP medical personnel had checked his blood pressure every day for the prior 45 days. He recalled that his average pressure was between 140/90 up to 150/110. He claimed that without medication, his pressure would rise to 200/120. He further claimed that when he was given Clonidine his pressure was usually 120/80 or less. He conceded that the medication given to him by Dr. Campbell was helping but complained that it did not keep his pressure down as much as the Clonidine alone.

He also stated that he suffers with neck, back and wrist pain as a result of a car accident in 2000 on his return from Charity to the Louisiana State Penitentiary in Angola, Louisiana. He received some recovery from a civil lawsuit against the person who caused the accident. However, he claims that he still suffers with residual pain. He had been under the care of Dr. Lockhart at Lafayette Street Medical Clinic before he was re-incarcerated.

He stated that he advised the medical personnel at OPP of his injuries. He stated that they gave him some pain relievers but it was less than what he had taken under Dr. Lockhart's care. He further complained, however, that the prison doctors have not given him medication for the pain

since July or August of 2004.  He testified that he submitted complaints and grievances but he did not receive any responses.

Wilson further testified that he was diagnosed with CTCL by the Dermatology Clinic at Tulane/Charity in 1993 or 1994.  After successful radiation treatment, he went into remission in 2000.  Since then, he has had another occurrence which is not being properly treated by the OPP doctors.  He claimed that Dr. Boh at Tulane wants to do additional radiation treatments because of the past success.  However, the prison only provides him with Atarax and TAC cream[9] for the skin itching.

He also stated that his last visit to Charity was November 19, 2004.  He stated that the Tulane doctors wanted to see him twice a week but OPP has only taken him there five times over the last year.  He claimed that the defendants are ignoring the recommended PUVA[10] radiation treatment.

He further complained that when OPP would send him to Tulane, he was sent with other inmates.  As a result, he would not arrive at the chemotherapy clinic on time to receive his treatments.  As an example, he stated that on one occasion, he was sent to Charity with another inmate who had a dentist appointment.  The guard was upstairs with that inmate at the dentist.  He was not escorted to the chemotherapy clinic until around 2:00 p.m.  His treatment requires that he

---

[9]This appears to be a reference to a topical cream used for the lesions on his skin related to the CTCL.  *See* Tacrolimus a/k/a Protopic, used for treatment of patients with moderate to severe atopic dermatitis in whom the use of alternative, conventional therapies are deemed inadvisable.  *Physicians' Desk Reference*, 60th Ed., p. 629-30 (Thomson 2006) ("*PDR*").

[10]PUVA is an acronym for oral administration of psoralen and subsequent exposure to long-wavelength ultraviolet light used to treat psoriasis.  *Stedman's*, p. 1488.

take five Oxisorelan[11] pills over a period of time before the radiation.  The staff said that there was not enough time left in the day for him to take the medication and complete the full treatment.

Wilson claimed that this happened to him on several times.  He stated that without treatment, he would get blisters and sores all over his body.  He further stated that, if the cancer spreads from his skin into his blood stream, he would die.

In response to the Court's inquiries at the *Spears* Hearing, Wilson provided a copy of a March 1, 1999, letter from Dr. R.K. Karukonda and Dr. Glenn R. Russo of the Tulane University Medical Center addressed to Kathleen McGinnis, RN, the Director Medical Services at the Washington Correctional Institute, confirming his diagnosis with CTCL.[12]

### C.   Subsequent Status Conferences

After receipt of a copy of the plaintiff's medical records from counsel for the defendants, the Court conducted a Status Conference on March 3, 2005, with the plaintiff and Anna Fuentes, counsel for defendants Hunter and Ham.[13]  The purpose of the hearing was to determine whether Wilson had begun the PUVA treatments for his cancer and whether the OPP medical staff had provided the UVA[14] glasses prescribed by the treating physicians at the Tulane Dermatology Clinic and MCLNO.

---

[11]Oxisorelan Ultra is used for the symptomatic control of severe, recalcitrant, disabling psoriasis not adequately responsive to other forms of therapy and when diagnosis has been supported by biopsy.  *PDR*, p. 3354-55.

[12]Rec. Doc. No. 10.

[13]Rec. Doc. No. 15.  The conference was recorded and the cassette tape is being maintained in Chambers.

[14]UV and UVA refer to ultraviolet light.

Wilson advised the Court that his radiation treatments began approximately two weeks prior to the conference.  He stated that he went to the clinic on February 2, 2005 and he started the treatments two weeks later.  He also stated that he had four treatments since then.

Wilson confirmed for the Court that the treating physician ordered that he wear sunglasses for 24 hours after each treatment but he did not receive them.  He also stated that a nurse at the dermatology clinic loaned him a pair of sunglasses.  Wilson also indicated that the sunglasses are not protecting his eyes the way he needs.  He stated that he needed a wrap-around pair that would fully block the light from coming in to his eyes.  The pair he borrowed from the nurse did not cover the entire eye as he was directed but they were better than nothing.

The Court directed counsel for the defendants to investigate why the appropriate eye-wear was not provided in accordance with the Tulane/MCLNO physicians' order and when the proper pair could be expected and to notify the Court of her findings.  On April 14, 2005, the Court received a letter from counsel, which was copied to the plaintiff, in which counsel indicated that Dr. Inglese, the Medical Director at OPP, had purchased the required glasses for the plaintiff.

The Court thereafter held another Status Conference with the plaintiff and counsel for defendants on May 17, 2005.[15]  Wilson confirmed that he received the glasses and was receiving his radiation treatment.  He stated that he returned the other glasses to Ms. Melancon at the dermatology clinic.

---

[15]Rec. Doc. No. 19.  The conference was recorded and the cassette tape is being maintained in Chambers.

Wilson also revisited his claims regarding the lack of treatment for the pain in his wrists caused by the Carpal Tunnel Syndrome[16] diagnosed after his 2000 car accident.  He stated that OPP was only giving him pain medication but no treatment for the injuries to his back or wrists.  He has not been evaluated at a hospital for either condition.  Wilson stated that he has sought treatment at OPP which he believes is documented in his medical records and grievance records.  He stated that he last received Naprosin[17] and Flexeril[18] in July or August of 2004.

## II.     **Hunter's Motion for Summary Judgment (Rec. Doc. No. 27)**

The defendant Hunter filed this Motion seeking dismissal of Wilson's medical indifference claims brought pursuant to § 1983.  The defendant argues that the plaintiff's factual claims fail to demonstrate deliberate indifference and that negligence claims do not arise to a valid § 1983 claim. The defendant also argues that the medical records, as briefly referenced in the Motion, demonstrate "a profusion of medical consultations for each of his ailments" and that Wilson received all medication prescribed, including the UVA glasses required for his radiation treatment.

In support of the Motion, the defendant filed a statement of uncontested facts in which he asserts no facts but instead states the conclusion that Wilson received adequate medical treatment

---

[16]Carpal Tunnel Syndrome is a type of compression neuropathy (nerve damage) caused by compression and irritation of the median nerve in the wrist where the nerve is compressed within the carpal tunnel, a bony canal in the palm side of the wrist that provides passage for the median nerve to the hand.  http://www.medicinenet.com.

[17]The commercial name for naproxin, a nonsteroidal anti-inflammatory analgesic agent used in the treatment of rheumatoid conditions.  *Stedman's*, p. 1182.

[18]Flexeril is used as an adjunct to rest and physical therapy for relief of muscle spasm associated with acute, painful musculoskeletal conditions.  *PDR*, p. 1832-33.

from the prison and other medical facilities.  He also submitted an unnumbered, unmarked copy of

Wilson's medical records from OPP which also includes documentation from MCLNO.[19]

The defendant also included an affidavit from Dr. Richard Inglese, the Medical Director for

the Orleans Parish Criminal Sheriff's Office.[20]  Dr. Inglese's brief affidavit indicates only that he

personally bought the UVA wraparound glasses for Wilson to use in connection with the PUVA

treatment.

The defendant therefore seeks summary dismissal of the § 1983 medical indifference claims.

The defendant also suggests in one brief sentence at the end of his memorandum in support that,

alternatively, the claims should be dismissed without prejudice for failure to exhaust administrative

remedies.  Wilson has not filed an opposition to the Motion.

The Court notes that the defendant's Motion does not address any of the state law claims

raised by Wilson or Wilson's claim that the prison officials failed to provide him with clean clothes

and bedding which aggravated his CTCL.  The Motion also does not address the § 1983 or state law

claims as they are raised against the other named defendants.

Consequently, the Motion for Summary Judgment addresses only the § 1983 claims against

Sheriff Hunter.  However, before considering the merits of the defendant's Motion, the Court will

proceed with its statutory frivolous review of the § 1983 claims urged against Sheriff Hunter.

III.    **Standards of Review for Frivolousness**

Title 28 U.S.C. § 1915A and Title 42 U.S.C. § 1997e(c) require the Court to *sua sponte*

dismiss cases filed by prisoners proceeding *in forma pauperis* upon a determination that they are

---

[19]Rec. Doc. No. 27, Exh. A.

[20]Rec. Doc. No. 27, Exh. B.

frivolous.  The Court has broad discretion in determining the frivolous nature of the complaint.  *See Cay v. Estelle,* 789 F.2d 318 (5th Cir. 1986), *modified on other grounds, Booker v. Koonce,* 2 F.3d 114 (5th Cir. 1993).  However, the Court may not *sua sponte* dismiss an action merely because of questionable legal theories or unlikely factual allegations in the complaint.

Under this statute, a claim is frivolous only when it lacks an arguable basis either in law or in fact.  *Neitzke v. Williams,* 490 U.S. 319 (1989); *Talib v. Gilley,* 138 F.3d 211, 213 (5th Cir. 1998).  A claim lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist.  *Harper v. Showers,* 174 F.3d 716, 718 (5th Cir. 1999).  It lacks an arguable factual basis only if the facts alleged are "clearly baseless," a category encompassing fanciful, fantastic, and delusional allegations.  *Denton v. Hernandez*, 504 U.S. 25, 32-33 (1992); *Neitzke,* 490 U.S. at 327-28.  Therefore, the Court must determine whether the plaintiff's claims are based on an indisputably meritless legal theory or clearly baseless factual allegations.  *Reeves v. Collins,* 27 F.3d 174, 176 (5th Cir. 1994); *see Jackson v. Vannoy,* 49 F.3d 175, 176-77 (5th Cir. 1995); *Moore v. Mabus*, 976 F.2d 268, 269 (5th Cir. 1992).

## IV.    § 1983 Claims Against Sheriff Hunter

Wilson named Sheriff Hunter as a defendant on the basis that the Sheriff was the head of OPP and should have known what was going on in the prison.  He therefore seeks to hold him liable in his supervisory roles over other employees and medical staff at OPP.

Proof of an individual defendant's personal involvement in the alleged wrong is, of course, a prerequisite to his liability on the claim for damages under §1983.  Thus, a supervisory official cannot be held liable pursuant to § 1983 under any theory of *respondeat superior* simply because

an employee or subordinate allegedly violated the plaintiff's constitutional rights.  *See Alton v. Texas A&M University*, 168 F.3d 196, 200 (5th Cir. 1999); *see also Baskin v. Parker*, 602 F.2d 1205, 1220 (5th Cir. 1979).  Moreover, a state actor may be liable under § 1983 only if he "was personally involved in the acts causing the deprivation of his constitutional rights or a causal connection exists between an act of the official and the alleged constitutional violation."  *Douthit v. Jones*, 641 F.2d 345, 346 (5th Cir. 1981); *see also Watson v. Interstate Fire & Casualty Co.*, 611 F.2d 120 (5th Cir. 1980).

In this case, Wilson does not allege that Sheriff Hunter was personally involved in his medical treatment or that he was personally responsible for providing him with clean clothes and bedding.  Without some personal involvement, Sheriff Hunter cannot be held liable under § 1983.

Supervisory liability may additionally exist "without overt personal participation in the offensive act if supervisory officials implement a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation."  *Id.* at 304.  An official policy is:

1. a policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the [government entity] ... or by an official to whom the [entity] ha[s] delegated policy-making authority; or

2. A persistent, widespread practice of ... officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents [the entity's] policy.

*Johnson v. Moore*, 958 F.2d 92, 94 (5th Cir.1992).  A plaintiff may also establish a custom or policy based on an isolated decision made in the context of a particular situation if the decision was made by an authorized policymaker in whom final authority rested regarding the action ordered.  *City of*

*St. Louis v. Praprotnik*, 485 U.S. 112, 124-25 (1988); *Bennett v. Pippin*, 74 F.3d 578, 586 (5th Cir. 1996).

Wilson has not alleged that any particular directive or policy of Sheriff Hunter led to the alleged denial of medical, delay in medical care or lack of adequate amounts of clean clothing or bedding.  His theory of liability is simply that Sheriff Hunter was the overall supervisor at the prison.  Wilson has therefore failed to state a § 1983 claim against Sheriff Hunter.        Wilson's § 1983 claims against Sheriff Hunter as a supervisory official must be dismissed as frivolous and otherwise for failure to state a claim for which relief can be granted pursuant to Title 28 U.S.C. § 1915(e) and § 1915A.

Wilson has also urged claims against Sheriff Hunter under respondeat superior and under the theory of negligence pursuant to Louisiana state law in connection with the inadequate care by the medical staff at OPP, the delays in transportation to MCLNO, and the insufficient opportunity to obtain clean clothing and bedding to avoid aggravation to his skin cancer.  These state law claims against Sheriff Hunter shall proceed forward.  Similarly, Wilson's urges against all of the defendants § 1983 claims and state law claims of negligence, malpractice, inadequate medical care, failure to provide prescribed medication, inadequate clean clothing and bedding.  These claims shall also proceed forward for further review.  Accordingly,

**IT IS THEREFORE ORDERED** that Lawrence Wilson's 42 U.S.C. § 1983 claims against former Orleans Parish Sheriff William Hunter are **DISMISSED WITH PREJUDICE** as frivolous and otherwise for failure to state a claim for which relief can be granted.

      **IT IS FURTHER ORDERED** that the **Motion for Summary Judgment (Rec. Doc. No. 27)** filed by the defendant, former Orleans Parish Criminal Sheriff William Hunter, seeking dismissal of plaintiff's § 1983 claims against him is **DISMISSED as moot**.

      New Orleans, Louisiana, this \_\_\_17th\_\_\_ day of _____August_____, 2006.

_____

**KAREN WELLS ROBY**

**UNITED STATES MAGISTRATE JUDGE**
